**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EDGEN MURRAY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| PARAGON INDUSTRIES, INC., | ) | **JURY TRIAL DEMANDED** |
| PARAGON INDUSTRIES SALES CO., LLC, | ) | |
| and DEREK WACHOB, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Edgen Murray Corporation, by and through its undersigned counsel, hereby files this Complaint against Defendants Paragon Industries, Inc., Paragon Industries Sales Co., LLC, and Derek Wachob, and alleges as follows:

## PARTIES

1. Plaintiff Edgen Murray Corporation ("**Edgen Murray**") is a corporation organized under the laws of the State of Nevada, with its principal place of business located at 11700 Katy Fwy, Suite 200, Houston, Texas 77079. Edgen Murray is a leading supplier of pipe, valve, and fitting ("**PVF**") products for the energy and infrastructure market.

2. Upon information and belief, Defendant Paragon Industries, Inc. ("**Paragon Industries**") is a corporation formed under Oklahoma law with its principal place of business located at 3378 West Highway 117, Sapulpa, Oklahoma 74066. Paragon Industries is a manufacturer of oil country tubular goods, line pipe products, American Society for Testing and Materials (ASTM) products, American Petroleum Institute (API) products, structural piping, and sprinkler pipe.

3.      Upon information and belief, Defendant Paragon Industries Sales Co., LLC ("**Paragon Sales**" together with Paragon Industries, "**Paragon**") is a limited liability company formed under Delaware law with its principal place of business located at 3378 West Highway 117, Sapulpa, Oklahoma 74066. Upon information and belief, Paragon Sales is the sales division of Paragon Industries.

4.      Defendant Derek Wachob ("**Defendant Wachob**") is a resident of Sapulpa, Creek County, Oklahoma. Upon information and belief, Defendant Wachob is the Chief Executive Officer and a substantial shareholder/member of both Paragon Industries and Paragon Sales, and directly and/or indirectly owns and controls Paragon.

## **INTRODUCTION**

5.      This case arises from a brazen scheme of fraud, deceit, and betrayal of trust orchestrated by Defendant Wachob, to exploit a twenty-seven-year business relationship in furtherance of his own reckless greed.

6.      Since 1996, Edgen Murray has been a leading supplier of PVF products for the energy and infrastructure market. Paragon is a manufacturer of PVF products and one of Edgen Murray's longest-standing vendors.

7.      Edgen Murray and Paragon have been business partners since 1997, when Paragon was controlled and operated by Defendant Wachob's father, Jack Wachob. Prior to the events giving rise to this lawsuit, Edgen Murray and Paragon enjoyed a mutually beneficial relationship grounded in mutual trust and executed hundreds of millions of dollars in business transactions.

8.      That relationship changed in the fall of 2022. At that time, Defendant Wachob—acting through and on behalf of Paragon—falsely and fraudulently induced Edgen Murray to enter a series of sham agreements designed to enrich Defendant Wachob at Edgen Murray's expense.

9.     The sham agreements took many forms.    *First*, Defendant Wachob falsely represented to Edgen Murray that Paragon had secured favorable terms for acquiring steel coil from AM/NS Calvert,[1] a steel finishing facility in Calvert, Alabama, pursuant to a future steel program. Defendant Wachob told Edgen Murray that Paragon could acquire steel coil from AM/NS Calvert at reduced prices, which it would use to manufacture PVF products for Edgen Murray. Defendant Wachob falsely represented that, in order to secure this arrangement, Paragon and Edgen Murray would need to deposit a combined total of $5 million with AM/NS Calvert. Based on these representations, and at Defendant Wachob's express direction and request, Edgen Murray deposited its share of the deposit ($2.5 million) directly with Paragon via wire.

10.     Unbeknownst to Edgen Murray, the future steel program was a complete lie. Defendant Wachob's representations regarding the steel deposit program with AM/NS Calvert were false, as Defendant Wachob then knew. Despite timely demand, Edgen Murray has never received return of its $2.5 million deposit, nor has Edgen Murray ever received any products from Paragon in return for the funds deposited.   Upon information and belief, Defendant Wachob instead used Edgen Murray's deposited funds for other purposes not disclosed to or permitted by Edgen Murray, such as paying other creditors.

11.     *Second*, in or around early 2023, Defendant Wachob falsely and fraudulently lured Edgen Murray into agreeing to provide Paragon advanced financing to further Paragon's acquisition of steel coil. Pursuant to invoices sent from Paragon, Edgen Murray advanced funds to Paragon so that Paragon could acquire steel coil from various manufacturers. Defendant Wachob

---

[1] AM/NS Calvert is joint venture between ArcelorMittal, a Luxembourg-based multinational steel manufacturing corporation, and. Nippon Steel Corporation, Japan's largest steelmaker.

represented that the funds advanced by Edgen Murray would be reimbursed, at an agreed rate of return.

12.     Defendant Wachob's representations were false when made, as Defendant Wachob then knew.  Edgen Murray complied fully with the terms of its financing arrangements with Paragon. However, despite repeated demand, and notwithstanding full performance by Edgen Murray, Paragon utterly failed to meet its payment obligations and remains indebted to Edgen Murray in the amount of no less than approximately $7,599,871.03.

13.     *Finally*, in or around September 2023, the parties reached an agreement whereby Edgen Murray directed purchase orders to AM/NS Calvert to acquire steel coil for delivery to Paragon, to enable Paragon to manufacture products for Edgen Murray or other third parties. As part of this agreement, Defendant Wachob represented that Paragon would repay Edgen Murray for the steel coil acquired by Paragon from AM/NS Calvert at Edgen Murray's expense, along with a markup of 10% of the total cost of the steel coil. Unbeknownst to Edgen Murray, these representations were false, as Defendant Wachob then knew. Defendant Paragon has failed to repay Edgen Murray for amounts paid pursuant to direct orders placed with AM/NS Calvert on Paragon's behalf, and Paragon owes Edgen Murray no less than $4,485,869.11 pursuant to this agreement.

14.     This lawsuit seeks to hold Defendants accountable for their fraudulent and wrongful conduct and seeks recovery for the substantial damages caused by Defendants' actions.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1931(b)(2) because a substantial part of the events or omissions giving rise to Edgen Murray's claims occurred in this district, and because Defendants regularly conducted business in this district. Negotiations and communications concerning arrangements giving rise to the claims asserted herein occurred, in part, in Montgomery County, Texas, which is within the Southern District of Texas. Further, invoices sent by Edgen Murray and consented to by Paragon include the following forum-selection clause specifying that any litigation arising from these transactions must be brought in Harris County, Texas (whether in state or federal court):

**18. Governing Law & Dispute Resolution.** This PO will be governed by the laws of the state of Texas without regard to itschoice of law provisions. The rights and obligations of Buyer and Seller arising from this Agreement will not be governed by theprovisions of the United Nations Convention on Contracts for the International Sale of Goods, the application of which is expresslydisclaimed by the Parties. Seller and Buyer agree that any litigation involving this PO will be brought exclusively in federal orstate courts located in Harris County, Texas. EACH PARTY HEREBY CONSENTS TO PERSONAL JURISDICTION INANY FEDERAL OR STATE COURT WITHIN HOUSTON, HARRIS COUNTY, TEXAS AND IRREVOCABLYWAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW AND THE LAWS OF THE STATE OFTEXAS, ANY CLAIM OR OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE, THAT VENUE ORPERSONAL JURISDICTION IS NOT PROPER WITH RESPECT TO ANY SUCH DISPUTE.

Additionally, Edgen Murray was injured and damaged in Harris County, Texas and within the Southern District of Texas.

## FACTS

### A. The October 31, 2022, Future Steel Deposit

17.     In or around October 2022, Defendant Wachob, acting on behalf of Paragon, approached Edgen Murray to solicit a deposit of funds from Edgen Murray to further Paragon's acquisition of steel from AM/NS Calvert, a steel finishing facility in Calvert, Alabama.

18.     According to Defendant Wachob, Paragon had reached an agreement with AM/NS Calvert, whereby Paragon could acquire steel coil from its AM/NS Calvert facility at reduced rates, provided that Paragon timely wire a total of $5 million to AM/NS Calvert to secure the agreement.

19.     Defendant Wachob represented to Edgen Murray that the steel coil acquired from AM/NS Calvert would be used to manufacture products for purchase by Edgen Murray.

20.     Defendant Wachob proposed that Edgen Murray and Paragon deposit $5 million with AM/NS Calvert, divided equally in amounts of $2.5 million, and requested that Edgen Murray wire its share of the deposit ($2.5 million) directly to Paragon.

21.     On October 31, 2022, Defendant Wachob sent a text message to Edgen Murray representatives touting the "benefit" of the purported arrangement with AM/NS Calvert, which Defendant Wachob claimed would "set [Edgen Murray and Paragon] apart from the others." A copy of this text message is attached hereto as **Exhibit A**. In that correspondence, Defendant Wachob stated he needed to send Paragon's wire to AM/NS Calvert "soon" and urged Edgen Murray to immediately wire their portion of the deposit:



22.     On the same date, October 31, 2022, Edgen Murray received Invoice No. 89292 (the "**Future Steel Deposit Invoice**") from Paragon, a copy of which is attached hereto as **Exhibit B**.

23.     On October 31, 2022, Edgen Murray wired two million five hundred thousand dollars ($2,500,000.00) (the "**Steel Deposit**") from Edgen Murray's operating account to accounts

controlled by Paragon, and Edgen Murray received confirmation of Defendant's receipt of the wire on October 31, 2022. *See* Bank of America Wire Confirmation, attached hereto as **Exhibit C**.

24.    Unbeknownst to Edgen Murray, Defendant Wachob's representations regarding the steel deposit program with AM/NS Calvert were lies. No such program between Paragon and AM/NS Calvert for reduced rates on steel ever existed, and Defendant Wachob's representations regarding the need and purpose of the Steel Deposit were entirely false, as he then knew. *See* Affidavit of Dave Pilat, attached hereto as **Exhibit D**.

25.    Further, although Defendant Wachob expressly represented that Paragon would wire the same funds in furtherance of the steel deposit program, this did not occur.

26.    Edgen Murray has issued Paragon timely demand for return of the Steel Deposit.

27.    To date, Paragon has not provided Edgen Murray any pipe products pursuant to the Steel Deposit, and Edgen Murray's Steel Deposit has not been returned.

28.    Upon information and belief, Defendant Wachob has instead used the $2,500,000 advanced by Edgen Murray for other purposes not disclosed to or approved by Edgen Murray, such as paying other creditors.

**B. The Steel Financing Agreement**

29.    Beginning in or about February 2023, Defendant Wachob, acting through and on behalf of Paragon, approached Edgen Murray and proposed Edgen Murray advance capital to Paragon to facilitate Paragon's acquisition of steel coil from various manufacturers. In exchange, Defendant Wachob represented that Paragon would repay Edgen funds advanced along with a specified markup of 10% of the amount advanced (the "**Steel Financing Agreement**").

30.    Under the Steel Financing Arrangement proposed by Defendant Wachob, Paragon would invoice Edgen Murray, detailing the anticipated tonnage of steel to be purchased. Upon

receipt of the invoice from Paragon, Edgen Murray would wire the corresponding funds due from its operating account to accounts controlled by Paragon. After the parties agreed upon a timeframe for repayment, Edgen Murray invoiced Paragon for repayment of funds advanced to include a 10% markup on the total amount advanced.

31.     Edgen Murray complied fully with the terms of the Steel Financing Agreement.

32.     Paragon, in turn, has failed to honor its obligations under the Steel Financing Agreement and failed to pay a total of no less than $7,599,871.03 (the "**Unpaid Amounts**") owed to Edgen Murray, as reflected in the following outstanding invoices, substantial portions of which remain unpaid, and copies of which are attached hereto as **Exhibit E**:

   a.   Edgen Murray Invoice No. 1200517 (Deposit on Steel 6410/Misc Coil PO #90858): $1,623,872.00

   b.   Edgen Murray Invoice No. 1213908 (Deposit on Steel PO #6411): $2,274,217.00.

   c.   Edgen Murray Invoice No. 1213910 (Deposit on Steel PO #62799): $3,701,782.03.

33.     Defendants do not dispute Unpaid Amounts are due and owing to Edgen Murray. However, despite timely demand from Edgen Murray, Defendant Wachob has falsely lulled Edgen Murray with promises that payment would be forthcoming.

34.     For example, by email dated November 22, 2023, regarding Unpaid Amounts, Defendant Wachob told Edgen Murray representatives, "[W]e will work and get anything cleaned up that needs it. We appreciate the partnership." *See* November 22, 2023, E-Mail, attached hereto as **Exhibit F**.

35.    In another February 7, 2024, email to Edgen Murray regarding the status of amounts owed due to the unpaid invoices, Defendant Wachob stated, "Yes keeping this on for front and will stay in contact with you." *See* February 7, 2024, E-mail, attached hereto as **Exhibit G.**

36.    Weeks later, on February 27, 2024, in a separate email, Defendant Wachob stated to Edgen Murray's representatives, "I'm pushing very hard to get this handled.  I will keep you posted on the progress." *See* February 27, 2024 E-mail, attached hereto as **Exhibit H**.

37.    Upon information and belief, as Defendant Wachob then knew, these representations were false at the time they were made. Instead, upon information and belief, Defendant Wachob used the funds advanced by Edgen Murray for other purposes not disclosed to or approved by Edgen Murray, such as paying other creditors.

38.    Defendant Wachob knew or should have known his representations were false at the time they were made.

39.    Additionally, upon information and belief, pipe procured from steel acquired by Paragon pursuant to the Steel Financing Agreement has been sold to other parties, and monies received from these purchases have not been remitted to Edgen Murray as owed.

**C. Purchase Order Agreement.**

40.    In or around September 2023, Edgen Murray suggested a process of directing purchase orders to AM/NS Calvert to arrange steel coil for delivery to Paragon (the "**Purchase Order Agreement**") for Paragon to produce pipe for Edgen Murray or third parties.

41.    Defendant Wachob, on behalf of Defendant Paragon, represented to Edgen Murray that Paragon would use the steel coil obtained via the Purchase Order Agreement for the manufacture of pipe for Edgen Murray.

42.    Defendant Wachob, on behalf of Defendant Paragon, represented to Edgen Murray that upon Paragon's delivery of pipe made with the steel coil obtained via the Purchase Order Agreement, Paragon would offset its invoices to Edgen Murray for the pipe by the cost of steel coil already paid for by Edgen Murray.  In other words, Edgen Murray would only have to pay for the cost of manufacturing the steel coil into pipe.

43.    On or about September 27, 2023, Edgen Murray issued a purchase order to AM/NS Calvert for 3,722 tons of steel coil to be delivered to Defendant Paragon.

44.    This amount of steel coil should have produced approximately 127,485 feet of 12.75" x 0.375" pipe at 85% conversion from steel coil to pipe production using a 15% yield loss. Edgen Murray paid AM/NS Calvert $3,273,897.44 for the steel coil and amounts paid to Paragon for conversion of steel coils to pipe was $227,398.76.

45.    Based on the amount of coil ordered, Edgen Murray expected 127,485 feet of pipe; however, the pipe produced and shipped on behalf of Edgen Murray only amounted to approximately 69,500 feet of pipe.

46.    In an attempt to legitimize the shortfall, Paragon issued Edgen Murray "credits" for the undelivered pipe.  According to Defendant Wachob, these "credits" would be used to reduce future amounts payable to Paragon by Edgen Murray.

47.    The unused "credits" attributed to the specific coil mentioned above total $1,479,704.52. In addition, Edgen Murray has additional "credits" that remain unused totaling $2,609,767.11.

48.    Upon information and belief, the Purchase Order Agreement was actually a ruse whereby Paragon would obtain steel coil at Edgen Murray's expense, manufacture a portion of the pipe to be delivered to Edgen Murray and issue a fictional "credit" for the shortfall, and then

10

misappropriate the remaining steel coil (paid for by Edgen Murray) to manufacture pipe to be sold to third parties. By doing this, Paragon eliminated its need to pay cash for raw materials in the pipe sold to the third parties (because the steel coil had already been paid for by Edgen Murray), thereby massively increasing Paragon's return on the pipe sold to the third parties.

49.    In addition to placing purchase orders with AM/NS Calvert to secure Paragon steel coil for manufacture of pipe sold to Edgen Murray, pursuant to the Purchase Order Agreement, Edgen Murray also directed purchase orders to AM/NS Calvert to secure Paragon steel coil for production of pipe products to third parties.

50.    Defendant Wachob, acting through and on behalf of Paragon, represented that Paragon would repay Edgen Murray for such steel coil acquired by Paragon from AM/NS Calvert at Edgen Murray's expense, along with a markup of 10% of the total cost of the steel coil.

51.    Upon information and belief, as Defendant Wachob then knew or should have known, his representations were false at the time they were made.

52.    Relying upon Defendants' representations, Edgen Murray ordered steel from AM/NS Calvert on Paragon's behalf. Edgen Murray's purchase order to AM/NS Calvert (301225), is attached hereto as **Exhibit I**.

53.    Edgen Murray issued timely demand for payment from Paragon for the amounts due and owing pursuant to purchaser order 301225. *See* Edgen Murray Invoice No. 1213909 (AM-NS Calvert PO Paid), attached hereto as **Exhibit J.**

54.    Defendant Paragon has failed to repay Edgen Murray for amounts advanced for steel orders to AM/NS Calvert, in amount of no less than $1,876,102.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT (FUTURE STEEL DEPOSIT)
### (AGAINST PARAGON)

55.     Edgen Murray incorporates the allegations contained in paragraphs 1 through 54 as though fully set forth herein.

56.     The Future Steel Deposit arrangement described above constitutes an enforceable contract between Edgen Murray and Paragon.

57.     Edgen Murray performed under the contract by wiring $2,500,000.00 to Paragon.

58.     Paragon breached the contract by failing to provide Edgen Murray any steel coil, finished products, or other items of value attributable to this contract.  Likewise, Paragon has failed to repay Edgen Murray amounts advanced under the contract.

59.     As a result of Paragon's breaches, Edgen Murray has suffered damages in an amount of at least $2,500,000.00.

### COUNT II
### PROMISSORY ESTOPPEL (FUTURE STEEL DEPOSIT)
### (AGAINST PARAGON)

60.     Edgen Murray incorporates the allegations contained in paragraphs 1 through 59 as though fully set forth herein.

61.     Even if, *arguendo*, the Future Steel Deposit arrangement described above does not rise to the level of an enforceable contract, the promise(s) made by Paragon to Edgen Murray are enforceable in equity.

62.     It was foreseeable to Paragon that Edgen Murray would rely on Paragon's promise(s) by wiring Paragon $2,500,000.00 million pursuant to the represented Future Steel Deposit arrangement.

63.     Edgen Murray did actually, substantially, and reasonably rely upon Paragon's representation of a Future Steel Deposit program by wiring $2,500,000.00 to Paragon in furtherance of that program.

64.     Paragon has failed to provide Edgen Murray any steel coil, finished products, or other items of value attributable to the Future Steel Deposit program.  Likewise, Paragon has failed to repay Edgen Murray amounts advanced pursuant to the Future Steel Deposit program.

65.     If Paragon's promise is not enforced, Edgen Murray will have provided $2,500,000.00 to Paragon in exchange for nothing.

66.     As a result of Paragon's actions, Edgen Murray has suffered damages in an amount of at least $2,500,000.00.

## COUNT III
### UNJUST ENRICHMENT / MONEY HAD AND RECEIVED (FUTURE STEEL DEPOSIT) (AGAINST PARAGON)

67.     Edgen Murray incorporates the allegations contained in paragraphs 1 through 66 as though fully set forth herein.

68.     Even if, *arguendo*, the Future Steel Deposit arrangement described above does not rise to the level of an enforceable contract, Paragon is liable to Edgen Murray in equity.

69.     Edgen Murray provided $2,500,000.00 to Paragon based upon the representations of Defendant Wachob on behalf of Paragon that Paragon would utilize such funds to acquire and manufacture products for Edgen Murray.

70.     Edgen Murray notified Paragon that it expected to either receive steel coil, finished products, and/or other items of value in exchange for Edgen Murray's participation in the Future Steel Deposit program.  Likewise, Edgen Murray has notified Paragon that Edgen Murray expected

to receive a refund of its $2,500,000.00 advance if such funds were not going to be used by Paragon to manufacture products for Edgen Murray.

71.　Paragon has failed to provide Edgen Murray with any steel coil, finished products, and/or other items of value attributable to the Future Steel Deposit program. Likewise, Paragon has failed to repay Edgen Murray amounts advanced pursuant to the Future Steel Deposit program.

72.　Defendant Paragon holds $2,500,000.00 which in equity and good conscience belongs to Edgen Murray.

73.　As a result of Paragon's actions, Paragon has been unjustly enriched and Edgen Murray has suffered damages in an amount of at least $2,500,000.00.

### COUNT IV
### BREACH OF CONTRACT (STEEL FINANCING AGREEMENT)
### (AGAINST PARAGON)

74.　Edgen Murray incorporates the allegations contained in paragraphs 1 through 73 as though fully set forth herein.

75.　The Steel Financing Agreement arrangement described above constitutes an enforceable contract between Edgen Murray and Paragon.

76.　Edgen Murray performed under the contract by wiring $7,599,871.03 to Paragon.

77.　Paragon breached the contract by failing to provide Edgen Murray steel coil, finished products, or other items of value attributable to this contract. Likewise, Paragon has failed to repay Edgen Murray amounts advanced under the contract.

78.　As a result of Paragon's breaches, Edgen Murray has suffered damages in an amount of at least $7,599,871.03.

COUNT V
PROMISSORY ESTOPPEL (STEEL FINANCING AGREEMENT)
(AGAINST PARAGON)

79.     Edgen Murray incorporates the allegations contained in paragraphs 1 through 78 as though fully set forth herein.

80.     Even if, *arguendo*, the Steel Financing Agreement described above does not rise to the level of an enforceable contract, the promise(s) made by Paragon to Edgen Murray are enforceable in equity.

81.     It was foreseeable to Paragon that Edgen Murray would rely on Paragon's promise(s) by wiring Paragon $7,599,871.03 pursuant to the represented Steel Financing Arrangement.

82.     Edgen Murray did actually, substantially, and reasonably rely upon Paragon's representation of the existence of a Steel Financing Arrangement by wiring $7,599,871.03 to Paragon in furtherance of that program.

83.     Paragon has failed to provide Edgen Murray with steel coil, finished products, or other items of value attributable to the Steel Financing Arrangement.  Likewise, Paragon has failed to repay Edgen Murray amounts advanced pursuant to the Steel Financing Arrangement.

84.     If Paragon's promise is not enforced, Edgen Murray will have provided $7,599,871.03 million to Paragon in exchange for nothing.

85.     As a result of Paragon's actions, Edgen Murray has suffered damages in an amount of at least $7,599,871.03.

## COUNT VI
### UNJUST ENRICHMENT / MONEY HAD AND RECEIVED (STEEL FINANCING AGREEMENT)
### (AGAINST PARAGON)

86.　　Edgen Murray incorporates the allegations contained in paragraphs 1 through 85 as though fully set forth herein.

87.　　Even if, *arguendo*, the Steel Financing Agreement described above does not rise to the level of an enforceable contract, Paragon is liable to Edgen Murray in equity.

88.　　Edgen Murray provided $7,599,871.03 to Paragon based upon the representations of Defendant Wachob on behalf of Paragon that Paragon would repay such amounts to Edgen Murray with a 10% markup.

89.　　Edgen Murray notified Paragon that it expected to receive repayment of the $7,599,871.03.

90.　　Paragon has failed to repay Edgen Murray or provide Edgen Murray with steel coil, finished products, and/or other items of value attributable to the Steel Financing Agreement.

91.　　Paragon holds $7,599,871.03 which in equity and good conscience belongs to Edgen Murray.

92.　　As a result of Paragon's actions, Paragon has been unjustly enriched and Edgen Murray has suffered damages in an amount of at least $7,599,871.03.

## COUNT VII
### BREACH OF CONTRACT (PURCHASE ORDER AGREEMENT)
### (AGAINST PARAGON)

93.　　Edgen Murray incorporates the allegations contained in paragraphs 1 through 92 as though fully set forth herein.

94.　　The Purchase Order Agreement arrangement described above constitutes an enforceable contract between Edgen Murray and Paragon.

95.     Edgen Murray performed under the contract by wiring all amounts due to AM/NS Calvert pursuant to the Purchase Order Agreement for steel coil to be delivered Paragon.

96.     Paragon breached the contract by failing to provide Edgen Murray all steel coil, finished products, or other items of value attributable to this contract.  Likewise, Paragon has failed to repay Edgen Murray amounts advanced under the contract and has failed to allow Edgen Murray to redeem the full amount of "credits" issued by Paragon.

97.     As a result of Paragon's breaches, Edgen Murray has suffered damages in an amount of at least $4,485,869.11.

## COUNT VIII
### PROMISSORY ESTOPPEL (PURCHASE ORDER AGREEMENT)
### (AGAINST PARAGON)

98.     Edgen Murray incorporates the allegations contained in paragraphs 1 through 97 as though fully set forth herein.

99.     Even if, *arguendo*, the Purchase Order Agreement described above does not rise to the level of an enforceable contract, the promise(s) made by Paragon to Edgen Murray are enforceable in equity.

100.    It was foreseeable to Paragon that Edgen Murray would rely on Paragon's promise(s) by wiring AM/NS Calvert the funds pursuant to the represented Purchase Order Arrangement.

101.    Edgen Murray did actually, substantially, and reasonably rely upon Paragon's representation of the existence of the Purchase Order Agreement by wiring the funds to AM/NS Calvert for Paragon's benefit in furtherance of that program.

102.    Paragon has failed to provide Edgen Murray all steel coil, finished products, or other items of value attributable to the Purchase Order Arrangement.

103.    If Paragon's promise is not enforced, Edgen Murray will have provided funds pursuant to the Purchase Order Agreement for Paragon's benefit in exchange for nothing.

104.    As a result of Paragon's actions, Edgen Murray has suffered damages in an amount of at least $4,485,869.11.

## COUNT IX
### UNJUST ENRICHMENT (PURCHASE ORDER AGREEMENT)
### (AGAINST PARAGON)

105.    Edgen Murray incorporates the allegations contained in paragraphs 1 through 104 as though fully set forth herein.

106.    Even if, *arguendo*, the Purchase Order Agreement described above does not rise to the level of an enforceable contract, Paragon is liable to Edgen Murray in equity.

107.    Edgen Murray provided funds to AM/NS Calvert for Paragon's benefit based upon the representations of Defendant Wachob on behalf of Paragon.

108.    Edgen Murray notified Paragon that it expected to receive products worth or repayment of the full amount of funds advanced.

109.    Paragon has failed to repay Edgen Murray or provide Edgen Murray with all steel coil, finished products, and/or other items of value attributable to the Purchase Order Agreement, and has failed to fully reimburse Edgen Murray for all amounts advanced.

110.    As a result of Paragon's actions, Paragon has been unjustly enriched and Edgen Murray has suffered damages in an amount of at least $4,485,869.11.

## COUNT X
### FRAUD
### (AGAINST ALL DEFENDANTS)

111.    Edgen Murray incorporates the allegations contained in paragraphs 1 through 110 as though fully set forth herein.

112.    Defendant Wachob, on behalf of himself and/or Paragon, represented to Edgen Murray that the Future Steel Deposit program, Steel Financing Agreement, and Purchase Order Agreement were legitimate business opportunities.  Specifically, Defendant Wachob represented that funds advanced by Edgen Murray to Paragon and AM/NS Calvert (as the case may be) would either be repaid or used for materials to be turned into products for Edgen Murray.

113.    These representations by Defendant Wachob were false, and Defendant Wachob knew they were false at the time he made them.

114.    Upon information and belief, Defendant Wachob failed to disclose (whether intentionally or recklessly) that he had no intention of adhering to the representations above and, instead, intended to misuse the funds advanced and material secured by Edgen Murray for other purposes not disclosed to Edgen Murray, such as paying other creditors of Defendant Wachob and/or Paragon and/or using materials secured by and for Edgen Murray for sale to other third parties.

115.    Defendant Wachob made the fraudulent representations above to Edgen Murray with the intent that such misrepresentations would induce Edgen to advance the funds and purchase the materials above.

116.    Edgen Murray acted in reliance on Defendants' misrepresentations and is owed at least $14,585,740.14 for advances made to Paragon and AM/NS Calvert.

117.    Edgen Murray would never have advanced the funds above if it had known Defendants had no intent to repay Edgen Murray and/or intended to misappropriate materials secured by Edgen Murray's payment.

118.    As a result of the foregoing, Edgen Murray has suffered actual damages in at least an amount of $14,585,740.14.

119.    As a result of Defendants' actions, Edgen Murray is also entitled to punitive damages.

## COUNT XI
### TEXAS THEFT LIABILITY ACT
### (AGAINST ALL DEFENDANTS)

120.    Edgen Murray incorporates the allegations contained in paragraphs 1 through 110 as though fully set forth herein.

121.    Defendants appropriated $14,585,740.14 from Edgen Murray.

122.    Edgen Murray did not effectively consent to Defendants' unlawful appropriation of such property.

123.    Specifically, Defendants deliberately misled Edgen Murray into believing it was providing Defendants with $14,585,740.14 for various legitimate business transactions (the Steel Financing Agreement, the Future Steel Deposit, and the Purchase Order Agreement).

124.    This was false.

125.    As a result of the foregoing, Edgen Murray has suffered actual damages in at least an amount of $14,585,740.14.

126.    As a result of Defendants' actions, Edgen Murray is also entitled to statutory and/or punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Edgen Murray respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

a. For damages in an amount to be determined at trial, but no less than $ $14,585,740.14, plus interest;

b. For punitive damages in an amount to be determined at trial;

c. For restitution of all funds advanced to Defendants, plus interest;

d. For piercing of the corporate veil of Paragon Industries Sales Co., LLC;[2]

e. For pre-judgment and post-judgment interest at the maximum rate allowed by law;

f. For costs of suit incurred herein, including reasonable attorneys' fees; and

g. For such other and further relief as the Court deems just and proper.

Plaintiff demands a jury trial on all issues so triable.

Dated December 16, 2024                    Respectfully submitted,

                                           /s/  R. Trent Shores
                                           R. Trent Shores,
                                           Oklahoma Bar No. 19705
                                           S.D. Texas Bar No. 3842782
                                           **GABLEGOTWALS**
                                           110 N. Elgin Avenue, Suite 200
                                           Tulsa, Oklahoma 74120
                                           Telephone: (918) 595-4800
                                           Facsimile: (918) 595-4990
                                           tshores@gablelaw.com
                                           *Attorney in Charge*

                                           ***Counsel for Plaintiff***
                                           ***Edgen Murray Corporation***

OF COUNSEL:

Rick M. Cella                              Alex R. Telarik
State Bar No. 24078328                     Oklahoma Bar No. 32521
S.D. Texas Bar No. 3896586                 (*pro hac vice forthcoming*)
**GABLEGOTWALS**                           **GABLEGOTWALS**
110 N. Elgin Avenue, Suite 200             110 N. Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120                      Tulsa, Oklahoma 74120
Telephone: (918) 595-4800                  Telephone: (918) 595-4800
Facsimile: (918) 595-4990                  Facsimile: (918) 595-4990
rcella@gablelaw.com                        atelarik@gablelaw.com

---

[2] At the appropriate time, Edgen Murray also intends to seek the remedy of veil piercing against Paragon Industries, Inc. under Oklahoma law. *See* OKLA. STAT. ANN. tit. 12, § 682(B).